Good morning. Illinois Appellate Court First District Court is now in session. The Third Division, the Honorable Justice Nathaniel House presiding. Case number 1-7-0658, People v. Philip Anderson. Good morning, ladies and gentlemen. This case is being heard via Zoom because of the COVID crisis. My name is Nathaniel House. I'm a judge on the Illinois Appellate Court and presiding over this case with me are Justices David Ellis and Eileen Burke. We're going to proceed as follows this morning. We're going to give each side 10 minutes, up to 10 minutes, uninterrupted presentation. At the end of that 10-minute questioning session, we will ask questions and the appellant may reserve a short amount of time for rebuttal, after which time we may ask questions of either party. Does anyone have any questions about how we're going to proceed today? Would the parties who are going to argue please state their names and the party they represent, beginning with the appellant. Good morning, Your Honors. My name is Carl Munch. I'm with the Office of the State Appellate Defender and I represent Philip Anderson. Thank you. Good morning, Your Honors. Assistant State's Attorney Sarah McGann on behalf of the people. All right, very well then. If no one has any questions about procedure, we can begin when you're ready, Mr. Munch. Good morning, Your Honors. May it please the Court. There were three issues raised in the briefs, but I intend to focus primarily on the first issue. However, if the Honors want to discuss the other two, I'm more than happy to as well. The only witness who testified at the jury trial that Philip Anderson was the shooter has now explained in his affidavit and testimony at the hearing on the motion for new trial that he lied to the police because he had been threatened and told to blame the shooting on Anderson, and he continued that lie at trial. But now he says the truth is that Anderson was not the shooter. At the hearing in the motion for new trial, the circuit court decided this was not sufficient evidence to warrant a new trial. However, the judge was wrong in denying the motion was an abuse of discretion. The state does not dispute that Kirkman's affidavit and testimony at the motion for new trial was newly discovered and that it was material and not cumulative. The state only argues that this evidence was not of such conclusive character that it would probably change the result at a retrial. The state is wrong and the judge abused his discretion for denying the motion. Judge Coghlan and the state took the position that this was only quote mere impeachment unquote. This was much more than that. Kirkman's testimony that he lied at trial and falsely identified Anderson as the shooter because he had been threatened and told to blame Anderson was not merely evidence to cast doubt on Kirkman's credibility, but it was Kirkman changing the substance of his testimony and providing a different set of facts in which Anderson is not the shooter. Identity was the most important question in this whole case and Kirkman's new testimony completely offends the state's evidence regarding the identity of the shooter. And Kirkman's testimony corroborated the testimony of Elizabeth Coates who testified at trial that Kirkman had told her that he lied to the police because he had been threatened. So this new evidence was both exonerating and contradicting the state's evidence and according to Harper as cited in the brief, that is sufficient to warrant a new trial. In addition, the state in its brief says that the Ortiz or Molstad, that is wrong. In both of those cases, there were new witnesses who would come in and and contradict the state's evidence and the state's witnesses. However, the state still had evidence and still had witnesses in culpating the defendant in those cases. In Ortiz, the Supreme Court explained that the new evidence was sufficient for a new trial, but it noted that on remand the fact finder will be charged with determining the credibility of the state in light of the newly discovered evidence and with balancing the conflicting eyewitness accounts. Here, with Kirkman's recantation, there are no conflicting eyewitness accounts. Both state eyewitnesses now say that Anderson was not the shooter. The two defense eyewitnesses said that Anderson was not the shooter. And two unimpeached alibi witnesses said Anderson was nowhere near the shooter. And the state's case, aside from the eyewitnesses, was weak. It presented no evidence of fingerprints, no DNA, no gunshot residue, no gun, no sweatshirt, no confession. The state's only evidence against Anderson was the identification by two witnesses who have now disavowed their identifications. Given all of this, Kirkman's new testimony is such that it would probably change the result on retrial and therefore was sufficient to Could you briefly address the jury issue? The third issue? Yeah, the third issue. Sure. Regarding the third issue, as discussed in the briefs, the judge had the jury come out and watch the video in open court with all of the parties present. Now, after Hollihan, obviously, the law has changed a little bit, I guess not changed, but the law has been clarified in terms of how that is to be analyzed. Now, in Hollihan, they said it was not plain error. And in fact, it was no error because in that case, the court instructed the jurors not to deliberate and in fact told everyone not to speak while the jury was in the courtroom watching. And no one spoke while the jury was in the courtroom watching in that case. Here, in this case, the judge did not warn the parties in the jury not to speak, and they did speak while the jury was watching the video. They asked questions, they asked the judge to replay certain parts of it. And in fact, at one point, the judge even narrated a part of the video as it was being played. And it is our contention that those facts are distinguishable from Hollihan and show that what happened in this case was error and that there was prejudice in this case because because the jury deliberated in front of non-parties and because the judge actually participated in those deliberations. And for those reasons, this case is different from Hollihan. Thank you. Justice Berg, do you have any questions? I do. Mr. Munch, how are you defining deliberation? I guess sort of just in the general sense of the jury discussing the evidence that they were seeing. So, point to me on the record where the judge participated in the deliberation. Well, the jury was asking, the jury asked him questions while watching the video, such as how time... I think I'm wrong, Mr. Munch. The jury repeatedly asked the judge specific evidentiary questions to which the judge responded, you have heard the evidence. Is that correct? He did. He did not answer any of those questions. However, at one point, he does narrate part of what is happening in the video. Are you talking about where he was calling out the times? But then he also points out that the truck is backing up and the truck turned and went through the T-intersection. And you think that is a deliberation? It's discussing what the evidence shows amongst the jury while after the case had been submitted to the jury. Correct me if I'm wrong here, Mr. Munch, but multiple times when there's video evidence, isn't the court required to put it in the record what the video evidence is? At trial, when the evidence is being presented, sure. But I think it's a little bit different when the case has been submitted to the jury for deliberation and they bring the jury back out when the jury asks to watch the video. Okay. Did the court specifically ask the defense attorney if this was acceptable method? I don't recall the judge's exact words, but I know the judge essentially said, here's the procedure I want to do. And ask the defense attorney to which the response was no objection. Is that correct? Correct. They said no objection. No objection. And at any point during the viewing of the video, did the defense attorney object or state that the court should not give the time stamps on the video? I don't believe they did, no. Was any of this, you claim that today that no one, this is different from Hollingham because no one spoke during the viewing in Hollingham, correct? Yes. Okay. So on this one, other than them asking the court specific questions and the court saying no, is there any indication that there was a discussion going on between the judge and the jury? Nothing other than has already been discussed. Okay. So when the judge responded to the jury that he did not have, that they heard the evidence, you've heard all the evidence, his standard response when they ask him questions. I'm sorry, Mr. Monahan, I'm having a senior moment and I had a really good question and it splitted right out of my head. So let me try this other question for you. In Ruth and in Hollingham and in McKinley, all three of those cases found that there was no error at all. Is that correct? It is. Okay. And your argument today is that that was not error because those juries were all instructed not to have a conversation with the judge. I believe so. I don't specifically recall the facts of the other one, but in Hollingham, the Supreme Court specifically noted that a part of the reason they find that error is that no deliberations happened. No one spoke. The jury merely watched the video. Okay. So is the jury asking for the tape to be replayed? Is that what you're citing to a deliberations? I'm still struggling. We're back to my original question that I'm struggling to figure out what you're calling deliberations. Is it deliberating when they say, can you back that up? Can we watch it from there? Is that deliberating? That is part of the deliberation process. The jury is watching the video and asking for parts to be replayed, asking to go back and watch from the beginning. I can see it's not particularly substantive deliberations at that point, but the case has been submitted to the jury, and they're now asking parts to be replayed, asking questions about the video. It's in the realm of what jurors do while they deliberate. Okay. Thank you, Mr. Murphy. I have no other questions. Thank you. Justice Ellis, do you have any questions? Just a couple. Good morning, counsel. Thank you. Good morning. Thank you for your presentation. A lot of time when we talk about newly discovered evidence, we're talking about it on post-conviction, and we've got a standard. And it looks like the standard for a motion for new trial, when this stuff doesn't come up post-conviction, well, I guess it's technically post-conviction, but it's still within the time of trial or the relevant post-trial time. We're very lenient on post-conviction and looking at a claim of actual innocence on the first stage because we accept everything in the record. We accept all of the submissions by the defendant as true. And we basically treat it like a motion to dismiss. If this is true, is he innocent? And we don't worry about contradictions and such. But when we're at this stage, I mean, you run through the different things. You talk about it's, you know, newly discovered, it's material, non-cumulative. I can understand your points on all those, but on the last point, you know, this is where we differ from a post-conviction. We go straight to a credibility judgment. We go straight to the third stage, right? And the judge gets to hear the testimony and decide whether he believes it. And here the judge said, I don't believe it. And I think the standard of review is abuse of discretion. So why was it an abuse of discretion? Why would no rational judge not believe this witness, his recantation? It was an abuse of discretion to the judge to not find Kirkman credible in this case, Your Honor. If you look at the reasons that Judge Coghlan gave, they don't hold up. Specifically, one of the very first things he said was he didn't find Kirkman credible because Kirkman made the identification to the police and then he gave a statement to the police and testified to the group that he did not find Kirkman credible. He testified before the grand jury consistent with that identification. However, that is false. That never happened. There is no evidence in this case that Kirkman gave a statement to the police or testified before the grand jury. So that shows that the judge was affirmatively relying on facts that were not in evidence. And that is certainly something that contributes to an abuse of discretion. The state in its brief noted that, you know, in a bench trial or when you're dealing with the judge, there's a presumption that they only consider proper evidence. That's true. But in this case, that presumption has now been rebutted, where the record affirmatively shows that the judge relied on evidence that did not happen. And the state conceived that the judge relied on evidence that did not happen. And it wasn't just that. Also, another reason the judge gave was that Anderson matched the description in the video. Again, there was no evidence of Anderson's description in this case or his height or weight. And the state again conceded that there was no evidence presented in this case of Anderson's description, height, or weight. So it was improper for the judge to rely on this non-evidence in order to support his finding that Kirkman's recantation was not correct. Let me ask you about the jury video deliberations issue. What is the... Do you agree you have to show prejudice? After Hollihan, I believe, yes, prejudice must be shown. Yeah, it seems to be the case. So what's the prejudice here? How do we know that, you know, how did this have any adverse effect on the deliberations, what happened, assuming there was error? Admittedly, it's difficult to conceive of how one would show prejudice, other than, you know, a very extreme case where somebody said something pretty crazy on the record or something like that. But I think in something like this, in Hollihan, one of the reasons they noted that there was no prejudice was that no one spoke on the record and there was no deliberation that occurred while they were watching the video. And as I stated before, that's not the same here. There was discussion between the jurors asking to replay parts of the video and asking questions of the judge. I can't point to any specific statement and say, oh, look, there, that's the prejudice. But in Hollihan, the court made it clear that there wasn't prejudice because certain things did not happen. But in this case, some of those things did happen. So that is some evidence of prejudice in this case. When we talk about prejudice, we talk about the lack of a fair trial, right? We, I grant you, sometimes that's very hard to show. But, you know, if you had something on the record where the trial judge said, you know, I'm thinking of something he could say, you know, boy, that sure looks a lot like the defendant. Right. I mean, that would be, you know, we wouldn't be here. The state would probably concede that that was there. That's so egregious. I mean, if we have something that shows that in some way, shape, or form, the trial judge put his thumb down on the scale, he made some suggestion, or if the record reflected he made a facial expression or something, or anything even beyond the video that was detrimental to the defendant, if he had made any kind of a caustic remark or something, I could understand more. But here, you know, he refused to answer any evidentiary questions. And there was that one moment that you highlight, and I don't have it right in front of me, but where he talks about what's on the video, even what he says about what's on the video. The video is approximately 1059 and it's going backwards, the truck backed up, turned into the tea alley, going forward again. He's just reciting fairly generic things about the video. I mean, at the end of the day, you would be asking us to conclude, assuming that that was error, that somehow this put the thumb down on the scale, right, that somehow this influenced the jury deliberation to make them do something they may not otherwise have done, right, which is convict. I, yeah, so if you look at the plan and some of the United States Supreme Court cases that led up to it, and particularly the, I believe it was the appellate court decision in the Holohan, they referenced some cases that talk about any interference with the deliberative process is prejudicial. And it's not necessarily that you have to show the judge made a statement influencing the jury, it's the sacredness, if you will, of the deliberative process with the jury and any violation of that is prejudice, or at least can be seen as prejudice. I'm sorry, Justice, can I jump in here before I forget again? Yeah, I'm done. Mr. Muntz, how does this square with the fact that defense counsel acquiesced to this procedure, never objected to anything that occurred, and now you raise it as an abuse of discretion. Do you have any pause? Or, because there's a whole plethora of case law that says the defendant cannot sit there and go along with whatever is happening, and then raise it on appeal saying, oh, no, no, no, that was it. So how do you square that? I'm sorry, are you talking about the third issue? Yes. Okay, I was confused by the abuse of discretion. I'm confusing everyone today. I'm sorry. Go ahead. Well, I guess, in response to the first point, I'm merely saying no objection is not acquiescence. That's not objective. Acquiescence involves something more of an affirmative act. But aside from that, this was raised as plain error. Had counsel objected, had counsel raised this issue, it would have been raised as a normal, preserved error. But, and so I guess that's what I'm saying is, the way to square this with counsel's lack of objection is that it was raised as plain error. And that's what happens when an issue is not objected and properly preserved. So how do you respond to the decades of case law that says you can't sit there and agree to a procedure and then raise it as an error on appeal? How do you, how do we reconcile this? Because there's lots of case law. As a plain error. All right, I get it. I'll let you off the hook then. Thank you. Thank you. Justice Ellis, anything else? No, no, I'm good. Thank you. Okay. All right. I want to go back to the first issue, Mr. Muntz. When the trial judge is considering this motion for new trial and is hearing the testimony of Kirkland, what is the standard that the trial judge is to use to determine whether or not to grant a new trial? Well, the Supreme Court told us in Molstad that he is to decide whether the evidence is newly discovered, material and not cumulative, and on such a conclusive character that it will probably change the results. And on that last point, the evidence does not have to show that the defendant is definitively innocent or definitely not guilty. The evidence has to show that, you know, that it's a looking character that would probably change the results. And the word probably is important because it shows that obviously, you know, there's no way to be certain about these things. And to me, I would argue that's also an indication that essentially it's the judge looks at the evidence and says, if the jury saw this, could things have gone differently? It's not so much a question of would he have ruled differently. It's could a jury have ruled differently? And we see that in Ortiz and Molstad when they talk about how the new witnesses, the testimony of the new witnesses would have to be balanced against the evidence from trial. And a jury in a new trial would have to weigh the two accounts and do a balancing of the two things. We're dealing with probabilities and what a jury could do if given this evidence. Okay, now I get your argument where the judge, I guess, he called George Bush, he misremembered some stuff. But here, the issue of whether or not the witness was threatened before he gave his testimony was brought up in trial. Kirkland's cousin testified about that. And she said that he said he was threatened and that's why he didn't tell the truth. Wasn't that pretty much kind of baked into the jury's verdict in this case? I disagree, your honor. Well, yes, she did testify that Kirkman said he lied to the police because he had been threatened. When Kirkman testified, he denied that. He said that's not true. So at that point, the jury had one witness saying he lied and the other person saying I'm not. But now he's saying, yes, I did lie. I lied to the police. I was threatened. And he confirmed that he did go talk to his cousin and tell her these things. So had the jury known that not only is she saying that he was threatened and lied to the police, he's agreeing he was threatened and lied to the police and told her that. So it would completely change the calculus when the jury is accepting the witness's credibility because now he's corroborating her testimony. But hasn't the Supreme Court held that a witness who recants and the substance of that recantation is, in essence, a confession to perjury at trial? Isn't that the least reliable type of newly discovered evidence? I mean, yes, there is a lot of case law that says, in general, recantations are not particularly persuasive evidence. But the case relied upon that. People, the marquee, marquis, not exactly sure how to pronounce it. In that case, the witness who recanted was the defendant's daughter. But aside from that, when the court looked at the overall evidence in that case, even if you took out that witness's testimony, there was still ample evidence indicating the defendant was not the shooter. The state has no other evidence, no physical evidence, no confession, anything that points to Anderson other than these two witnesses who have now disavowed their identification. So I think this is one of those rare and extraordinary and unusual cases where recantation is sufficient for warranting new trial. In order to find an abuse of discretion, we have to make a finding that no reasonable judge would make the same decision or that the judge applied the wrong legal standard. Here, the judge reviewed the evidence. How can we say that no reasonable judge would not make the same decision in this case? In addition to the things you stated, reasons you can find abuse of discretion are if the judge's decision was arbitrary, fanciful, or unreasonable, or that no reasonable judge would do it. In this case, the judge relied on two pieces of evidence that were not in evidence. That's fanciful. He fancied that Kirkman testified in front of the grand jury, but it never happened. In addition to the two things I mentioned, the judge explained that the recantation was rebutted by the immediacy of the identification, but that ignores that Kirkman explained his recantation. He was threatened and told to blame Anderson before he went to the police. The timing of that is perfectly consistent with his recantation. One of the other things, the judge mentioned that Kirkman's trial testimony was corroborated by Ambrose's prior statements. That's true, but it completely ignores that Ambrose at trial repudiated those things. The judge arbitrarily picked some of the evidence to say that Kirkman's testimony was false, but arbitrarily ignored the other evidence that disagreed with this conclusion. The judge, his decision was in part based on arbitrary and fanciful decision-making, and it was unreasonable to rely on evidence that did not exist in order to support his conclusion. For all of those reasons, you can say that the judge's decision was an abuse of discretion. Thank you. I'm going to the conclusion of the case, the newly submitted case regarding the viewing of the video. At the end of the Supreme Court's decision, they say that, first of all, it's not plain error, but then they seem to say, well, there's also no prejudice. What is the court saying? Does the defendant who makes this type of claim have to show that he was prejudiced by the display of the evidence in the jury room? In this case, we do have the judge describing what took place, but is the Supreme Court requiring the defendant to show he was prejudiced by that statement? It does seem to indicate that they expect some kind of showing of prejudice. I think where that comes from is some of the earlier cases essentially found this kind of action where the court held that it was interfering with the deliberative process, but that was essentially second-prime or what some people call structural error. In that case, no showing of prejudice would need to be found. I think what they were saying in would be the kind of error for which prejudice is presumed and simply saying, in such a case where this error occurs, we're not going to presume prejudice, but some showing of prejudice must happen. They weren't terribly specific about exactly how a showing of prejudice would be made in that case, but that's how I read the Supreme Court's language about prejudice. If we were to apply that to this case, how would this defendant argue that he was prejudiced by what took place? I think I would just go back to what I said earlier, Your Honor, about the case law that talks about how the jury's deliberation process is supposed to be secret and insulated and interference with that process by outside parties, even unintentional or unconscious interference. Some of the cases talk about how just the presence of the judge in the parties could possibly have a chilling effect on the deliberation or an unintended body language or facial expression from a judge or one of the parties could influence the jury's deliberation. All right. Thank you. That's all I have. Justice Ellis, Justice Burke, anything else? All right. Very well. Ms. McGann, you may proceed when you're ready. Thank you, Your Honor. May it please the court, counsel. Your Honor, this court should reject defendant's three claims, including the two discussed here on appeal, and reject his invitation to reverse his first-degree murder conviction for the events that transpired on April 1, 2013, when defendant boldly in broad daylight approached a group of people and shot 25-year-old victim Jonathan Hoskins dead. Your Honor, regarding defendant's first issue, the trial court did not abuse its discretion when it denied his motion for new trial based on the supposed evidence of actual innocence. In fact, the trial court properly relied on the remaining substantive evidence, and this supposed recantation by Tyson Kirkman did nothing to discount the substantive evidence that remains. There's definitely been long-standing case law that recantations are inherently unreliable, and they're really only applicable in extraordinary and unusual cases, as you pointed out, Justice House. However, as the preservation of evidence has evolved, we've been able to have substantive evidence remain, so it makes it even harder to show that this recantation would be one of those exceptions. And let me just first point out, this was an individual, Mr. Kirkman, who emphatically, unequivocally testified that it was defendant who shot his friend, Jonathan Hoskins, stating that you would know because he knew for the majority of his life. So to think that then post-trial he would change that testimony is really just a textbook case of being unreliable. But first, before we go into an actual innocence analysis, I just want to point out that the substantive evidence still remains, and that being Charles Ambrose, who testified that, sure, he recanted on the stand, but he was impeached by multiple ASAs and police officers, and what remained was his handwritten statement given to an ASA just following the murder implicating defendant L.P., his photo advisory form signed, as well as the photo array where he indicated, again, it was L.P., and also his grand jury testimony, again, where he implicated defendant. That still remains. Also, the corroborating video still remains. So even if we're to analyze this recantation, the judge was still able to consider that evidence. Contrary to counsel's statements that the judge, you know, maybe misattributed the evidence to Kirkman, that's really unimportant because it was still substantive evidence. But if we were to look at this under an actual innocence analysis, first the state would dispute the fact that we concede to the first two requirements. This is not newly discovered. This is a recantation that the substance of it is that Mr. Kirkman was lying at trial because he was afraid that if he didn't implicate defendant that his family would be harmed. This was certainly defendant's defense, one of innocence, and why Mr. Kirkman was cross-examined rigorously and extensively, and also why the defense put on Elizabeth Coates to impeach Kirkman or attempt to, albeit unsuccessfully, to, you know, infuse this notion that he was lying because of the supposed threats to his family. For the same similar reasons, this was cumulative and not material. This was defendant's presented defense. It was rejected by the jury. The judge in this case who heard the motion was also the judge at the trial, and he also rejected it. I also want to point out that during the motion or the hearing on the motion, the judge did ask Kirkman if he did view a photo array and sign it, and he did indicate that he did, and so that came in at the hearing. Certainly not substantive evidence, but the judge did hear that, so moving on to the fact that this is also not the type of evidence that would have changed the outcome on retrial here. We do not have a weak identification case, as counsel suggests. We have multiple witnesses who are testifying, two eyewitnesses, one of whom recants Ambrose, but he's severely impeached, and then we have, again, Mr. Kirkman, who, again, emphatically identified defendant both on the and I would just point out that he was not impeached by Elizabeth Cope's testimony following that, and I also want to point out that, as this court is well aware, the testimony of a single eyewitness would have been sufficient in this case, so I would just ask this court to deny this discretion when he denied this claim as well, and moving on to the next issue, which is the third issue, the trial court, again, did not commit error here, did not abuse its discretion, and this is very much revealed by the recent case, the Supreme Court opinion in People v. Remand, and the jury asked to watch the video of the traffic stop where the field sorority tests were occurring, so the judge there brought them out to the courtroom, just like in this case, and then the alternate jurors were there, and there was also the attorneys and the judge. Here, we just had the jurors, the parties, and the judge. The Supreme Court in that case reversed the third district decision, stating that that was not error for the judge to do that. It was certainly not presumed error, because the jurors were not deliberating at that time. They were removed from the jury room, and they were admonished, you know, we're going to watch the video here, just as in this case. We have a judge who, his statements very much expressly show that the judge, you know, sort of foreseeing this, discussed it with the attorneys, and the prosecutor indicated that the video, the video surveillance of the shooter and part of the murder here, was on, was viewable on the prosecutor's laptop, but that there was other, there was other documents or material on the laptop, so the judge, making sort of the best case decision, said, well, you know, what if we bring him out here once the jury asked to watch the video, and the judge very much says that you're going to take a break in your deliberations, and you're going to come out to the jury room, so there's a pause. The jury is not deliberating when they come out to the courtroom, and that's what Hollihan really emphasizes, that deliberations are not some ongoing, you know, sort of occurrence. We often have jurors who are sequestered, or there's there's lunch, or there's breaks, so the jurors were taken out of their deliberations zone, if you will, brought into the courtroom, and we do have a judge here who admonishes them, you know, I'm just going to be the tech front guy, I'm going to show you the video, you can watch it as many times as you want, and what ensues is very much that, and what really is telling here is that we have those three questions that were based on evidence, and the judge says, you need to consider the evidence, you've heard it, and that's very revealing, and the issue about the truck and narrating that scene, when I think it was two jurors asked to, you know, back that up, I mean, we have the judge sort of giving the time stamp, and then just narrating what is actually occurring. The video speaks for itself, the jury watched it, there's nothing beyond that. I think that it's important to note that in Hollihan, they comment on the Supreme, or the United States Supreme Court case people v. Alano, which did not address the error issue, just assumed that there was error because of the potential deliberations, but that was a case where the jury was in the deliberation room, alternate jurors were in there, but they still found no prejudice, because as Hollihan sort of reinforces, prejudice is some sort of communication, verbal, non-verbal, that would affect the, or impact the jurors, something that would chill their, you know, their thinking, and we there's just no error at all, no presumed error, and Hollihan makes that clear, and we see that because we have a break in the deliberation, but even if this court were to review it under plain error, Hollihan certainly, you know, rejects that it would be second prong, so regarding the first prong here, again, there's no prejudice, where we have really just may have not been ideal, but the judge was making, you know, the best decision that he could at that time, and that certainly does not rise to the level of an abuse of discretion, so for these reasons, and the reasons contained in the people's brief, we would ask that you affirm defendant's first degree murder conviction. Thank you. Justice Berg, do you have any questions? I do. Ms. McGinn, do you agree with defense counsel that the trial court on the motion for new trial was relying on Ambrose's statement to the grand jury rather than Kirkman's? Your Honor, he may have been relying on that in part, and I would submit to this court that that was not erroneous. Again, that still remained as substantive evidence. Right. Wasn't he attributing the statement that he was referencing to Kirkman, when it was actually Ambrose's statement? Yes, he did. He did. With regard to the motion for new trial, during defendant's testimony, he acknowledged that he had viewed and signed the photo array. Is that correct? Correct. Based on all of that, was the trial judge making a credibility determination with regard to Mr. Kirkman? I think very much so. I think the trial judge was certainly weighing the testimony that he heard from Mr. Kirkman at trial with this witnesses that the judge heard at trial that impeached the defense witnesses, and that was completely reasonable and proper for the judge to do so. Ms. McGinn, let's move to the other issue for a moment. If the court had responded to any of the jury's questions to them, would you agree that that would be considered deliberation? Your Honor, I would... Oh, sorry. How tall is the gate? Would you agree, if he had given a response, would that then qualify as deliberation? Your Honor, based on Hollihan, the jury was removed from deliberating. Maybe that's not always the jury room. Maybe there have been other areas that jurors or juries have been sent to deliberate, but this was very much an explicit case of, there's a break in deliberations, we're bringing you to the courtroom. Now, certainly that might have just jumped to the conclusion that that was definitely error, but I think to analyze it under prejudice, we'd have to know what the content of those responses would have been, because here we had a judge who very much responded with answers. You've heard the evidence, you've heard the evidence three times, and again, was just playing housekeeper, tech run guy. The only potentially fuzzy sort of question was when they asked about the truck, but I think that if you compare it to the other questions, we had a judge who was very well aware that he was going to defer to the evidence that the jury heard. Thank you. I have no other questions. Thank you, Your Honor. Thank you. Justice Ellis? Yeah, just a couple. Good morning, Ms. McGann. Good morning, Your Honor. Thank you for your presentation. Just a couple questions. Let's start with the jury deliberation, because that's where you left with Justice Burke. If the record showed that the jurors were talking amongst each other while that video was playing, presumably talking about what they're watching on the video, but whatever, if they were talking to each other, is that error? Your Honor, I think that the presumed error would be a little bit more muddy, because then we have jurors who now are in the courtroom. Essentially, the judge has removed them from deliberating and are not following the court's admonishments, which were to simply watch the video. I think if we had a trial judge who allowed the jurors to continue to ask questions, that would definitely be a potential case for prejudice. We certainly don't have that here. Right, but I'm not talking about asking the judge questions. I think if they started asking the judge questions and he started answering them substantively, I think you'd be in a much different situation. That's not how I read the record that he was answering. He was trying not to answer them. But if the jurors were talking to each other, not to the judge, but to each other, wouldn't that be deliberating? I think that would enter into a be more of a ripe example of prejudice, because they're communicating without knowing the substance of what they're communicating and if it's sort of impacting their deliberations. But I will point out, it's really when a non-juror is communicating. So the cases with the alternate jurors being present or the judge, typically, I know that's not this example or but that would be a unique situation to examine, for sure. But don't we say that it's error for any non-juror to be present during the deliberations, even if they're just sitting there? I mean, if the judge went and sat in the jury room and kept quiet, that would be error, right? I mean, that's a pretty egregious example, but that would be error, wouldn't it? Yes, certainly. I would agree with you. And that wasn't under the guise of playing a video or some sort of, because in People v. Alano, the United States Supreme Court case, again, that was in the jury room and they still found no prejudice. But I think it would definitely be error to consider off the bat. Is there some indication here, though, that the jurors were talking to each other? I mean, the way they were asking questions and the use of the word we, didn't that suggest that maybe more than one of the jurors was speaking for some of the other jurors as well and requesting that something be rewound or played back? And, Your Honor, I think there was a collective desire to play back the truck scene, but there's no evidence that that was taking place out in the courtroom. Perhaps while they were deliberating, this was some sort of issue that was concerning for them, but there is no evidence that they were communicating. Okay. Well, fair enough. And it's also fair to say, I mean, there's not going to be a transcript of the jurors talking. The court reporter wouldn't have taken that down. But then again, the defense didn't make a record afterwards either. So that's a point in your favor. Um, so I suppose the jury asked to see this video almost right away, right? It was very early in their deliberations. Correct, Your Honor. So you're saying it could be just as reasonable an inference to say that the jurors already knew it was on their collective minds because they'd talked about it back in the room. That was a particular thing they cared about. And so if one juror speaks up and says, we want to see this again, I think what you would say is that doesn't necessarily mean that they came to that conclusion in the courtroom while the video was playing, but they could have come to that conclusion in the deliberation room before they came out. Correct. I'm speculating, but I'll take your point in my favor that counsel did not speak up, um, and rely on that part. Okay. Fair enough. Um, let me talk to you a little bit about the first issue, the new trial. Um, let me, let me tell you what, what's, what's, um, bothering me a little bit, and you can tell me whether I'm wrong. Um, the, the judge obviously, um, was talking about Ambrose when he said that, uh, you know, he testified before the grand jury, the lineup, the whole thing, uh, when, when Kirkman had not, I think it's Kirkman had not done that. I think you acknowledge that that was wrong, but you, you, I think your point was that still makes, that was still a comment on some of the evidence in the case, but here's what, here's what bothers me about that. Ambrose, Ambrose never testified at trial that the defendant was a shooter. He testified all along that at trial, at trial, he testified, I, I never ID'd him. And the impeachment, all the state's attorneys and cops coming forward was to say, yeah, you did impeach him. That's a, I mean, I'm sorry. Yeah, you did identify him. And that's kind of a, kind of a horse of a different animal or whatever that phrase is. That seems like a slightly different thing than somebody coming forth post trial and saying, I know what I said at trial. I know I said he did it, but I was lying. And here's why. I mean, Ambrose is saying, nope, never said it. Kirkman is saying, yeah, I did, but I was lying. That seems very different to me. And so to me, there's plenty of reason to believe that Ambrose was lying at trial. You know, I'm not saying he was, I'm not saying he wasn't, but he had a whole bunch of law enforcement say, nope, nope, he was consistent. He ID'd the defendant. So when he got up on the stand and said, no, I never did that, that was, you know, that's pretty hard to believe. Kirkman's story is completely different. And to confuse those two seems to be a pretty big mistake to make. So what is your response to that? Certainly, Your Honor. And I think that's a very excellent question. And I should have emphasized that, you know, the substantive evidence attached to Ambrose or his testimony aside, the trial judge here also very much commented on the credibility determinations that it was making in denying defendant's motion for new trial. That being that it found Kirkman to be incredible at this juncture. And, you know, really reconciling that with the fact that the defense already put on Elizabeth Coates, who brought the same narrative up at trial, which was that Kirkman was being threatened by, or his family member was being threatened by people in the neighborhood if he did not implicate defendant. And I think logically speaking, it's definitely a reasonable inference to wonder, well, defendant has been convicted and is incarcerated. The threat seems to have now dissipated because it was the threat to implicate defendant. It's almost an illogical recantation if you really dissect it anyway. So it's not unreasonable that the trial judge here found Kirkman to be incredible when he testified at the hearing. I wish he had said what you just said, but he didn't. He seemed to confuse him with Ambrose. That makes this a tougher question. I heard you say today, I'm sorry, I don't remember what you argued in the briefs. Is it your position that the recantation evidence was not newly discovered evidence? Yes, your honor, that would be my position. The fact that the substance of it is not newly discovered, the notion that Mr. Kirkman was lying, committing perjury on the stand, lying when he at trial. The substance of that is that he did not see defendant shoot Mr. Hopkins, the victim here. That existed, that notion. And that's why defendant brought his defense of innocence and put on a witness like Elizabeth Coates. I'm sorry, I'm not seeing this. The guy changes his testimony, right? He swears under oath that the defendant was the shooter, and then he gets up in a motion for a new trial. He says, I was lying. How is that not newly discovered? How is that not new? Well, because the, and perhaps I'm not clarifying, but because defendant would have known if Kirkman was lying at trial and he did. And that's why his counsel cross-examined him extensively and why they put on their defense. So sure, the actual affidavit and the recantation, the physical recantation and presented in this form was new, but it wasn't newly discovered. That would be my position. So if somebody is innocent and someone testifies against them at trial, it's not newly discovered because the defendant knew he was lying because he knew he was innocent. And so anytime someone comes forward who testified against an innocent person, an innocent person, his recantation will be deemed not newly discovered. I think that it would be a case by case, Your Honor. And here it's, we've got, it sort of goes hand in hand with the credibility determinations, especially where we have a judge who heard the testimony of Mr. Kirkman at trial and is able to reconcile it with his testimony at the hearing. And so being newly discovered aside, because I certainly think that there are situations where there is a recantation who has, it happens to be an extraordinary situation that would be reliable, but this is just not one of those unusual cases. Okay. I understand the argument about credibility determinations. I just, I'm troubled that the state is claiming this isn't newly discovered. I don't, I don't see that. And I question whether you should be arguing that. I just, I don't, I think the upshot of that is that an innocent person can never show a recantation because he knew that the person testifying against him was lying. And that seems like a road we don't want to go down. Well, that's my take at least, but okay. Thank you. That's all I have. Thank you. Thank you, Your Honor. Ms. LeGan, what is the actual substantive evidence admitted to trial that identifies the descendant as the shooter? That would be the evidence that is attached to Mr. Ambrose, who recants essentially on the stand. What part of Mr. Ambrose's presence there is the evidence that was admitted into trial being the grand jury testimony, the statement that the signed statement that he gave police, and the photo array identifying defendant all admitted into evidence. All right. This is substantive evidence of the defendant's guilt. Yes, Your Honor. That would be, that would be my position. Do you agree that when the judge makes his ruling on whether or not to grant the new trial, he's basically doing it based on abuse of discretion? That's the standard he, you know, that's the standard we judge his actions on, but he's doing it based on his recollection of the evidence. The defendant argues that the decision here was based, was fanciful, and therefore, the abuse of discretion. And it was fanciful because his regard of Kirkman's recantation was based on faulty misremembered events by the trial judge. How do we address that? Certainly, Your Honor, the standard here is an abuse of discretion. And you know, as this court knows, could any rational prayer of fact have made this decision. And I think, again, just to reiterate, aside from misattributing that evidence to Mr. Kirkman, the trial judge, or the judge at the hearing was also at the trial, was, you know, able to make those very necessary credibility determinations, that even if this wasn't the judge at the trial, would have to review a record, perhaps to sort of reconcile where you have a witness here recanting. But doesn't that draw into his, doesn't that make his credibility determination suspect, when critical points that he relies upon to say the recanting witness is not credible, actually didn't happen, and it happened to another witness? Well, Your Honor, I don't think it's fatal here to his discretion. I think it's a part of his ruling. And I don't think it's the only thing that the judge is relying on. And again, the people would maintain that that evidence still exists. But the judge also coupled it and reconciled it with the credibility. Wait a second before you do that. I'm sorry. You just said this evidence still exists. Before you left that, I wanted to know I'm trying to find out exactly what you're talking about. The evidence that was misattributed to Kirkman, that is really attached to Ambrose, that still exists, it still remains, that there was a signed photo right by Mr. Ambrose and the grand jury testimony. The recantation does not fully discount any of that. Any misattribution of that does not, again, I don't think that that is fatal to this claim here where a judge also is weighing the credibility of Mr. Kirkman at the hearing and where the judge asks him about signing a photo right after following the trial, or following the shooting, excuse me. All right. Now, with regard to whether or not the evidence is new, isn't it true, Bill, that this witness, Kirkman, was actually a state witness. And although the defendant knew, allegedly knew this guy was lying, that witness actually was not really available to this defendant, therefore it's new. I mean, he's a state witness, right? So he's not really available to the defendant. So when he comes up and says I lied, that's new evidence, isn't it? Certainly. It could absolutely be conceived as a, the recantation is new. It's just a matter of reconciling it with his testimony, again, which was very emphatic at trial where he didn't recant on the stand and Charles Ambrose was a state witness and had no problem recanting. Mr. Kirkman unequivocally identified the defendant on the stand as the person who shot Jonathan Hopkins. All right. Well, thank you. I have no further questions. Justice Burke, Justice Ellis, do you have anything else based on that? No. Okay. All right, Mr. Mike, you have a stage, a short rebuttal, please. Thank you. Sure. I just have a few points. The state mentioned that even after the recantation, the substantive evidence remained. And as Justice Ellis inquired about, that substantive evidence consists of his statement to the ASA and his identification to the police and the grand jury testimony. Yes, that's true. However, at trial, he repudiated those things. And so if you combine Kirkman's recantation of his trial testimony, along with Ambrose's trial testimony, no witness would get on the stand and say, I saw Anderson shoot him. Yes, they can bring up police officers who are going to say, well, he told me he saw that, but a jury is not going to see a single witness get on the stand and say, I saw Anderson shoot Hoskins. That would go a very long way in the jury's mind. And in a situation like this, when a judge is reviewing a motion for new trial based on new evidence, they're supposed to decide whether the new evidence could probably change the result. And the new evidence in this case is absolutely of that character, that it could probably change the result. Because the only witness who is willing to get on the stand at trial and say, yes, I saw the defendant shoot the victim, is now saying, that's not true. I didn't see that. I lied when I said that. And so in this case, the new evidence is more than just the run-of-the-mill mirror recantation or mirror impeachment that we see. This was extraordinary, where the star witness who said, as the state pointed out, he testified at trial unequivocally. I saw him shoot him. But now he's more than equivocating. He's walking that back so much and saying, I lied to the police, I lied at trial, and I'm willing to admit that I lied now. That would have an extraordinary effect on a jury's perception of the credibility of the The reasons that Judge Coghlan gave for finding Kirkman not credible and finding this evidence not of conclusive character simply doesn't support his conclusion. It was arbitrary, fanciful, and unreasonable. And based on his reasons, no reasonable judge could provide the same reasons he did with this evidence and reach that conclusion. His denial of the motion from trial was an abuse of discretion. For these reasons and the reasons discussed in the briefs, we ask your honors to reverse Mr. Anderson's convictions and remain for a new trial. Anyone have any questions of either side, Justice Burke? Yes, Mr. Monk. What occurred here with people giving statements to the grand jury, giving statements to the police, statements to the state attorney, and then when the case comes to trial and they are refuting all those prior statements, that's fairly common in gang cases, is it not? Yes, it certainly happens. Okay. And so that is why we have the rule that the prior statements come in as sensitive evidence. Isn't that correct? I guess I'm not entirely sure of the exact reason, but yes. It's a byproduct of it. So when we say it comes in as substantive evidence, Ambrose's statement to the grand jury and his handwritten statement to the state attorney, both of those came in as substantive evidence, even with him refuting that on the stand. Is that correct? Yes. Okay. So it's not like there's no evidence if these two refute their prior statements. If Kirkman and Ambrose both refute their prior statements at trial, it's not like there's no evidence because their original statements come in as substantive. Is that correct? That's correct. The prior inconsistent statements that were admitted substantively would still be there. Okay. Thank you. That was my only question. I guess my only response is, again, we're looking at this as, could this possibly, could this probably change the results? And from the perspective of a jury who, while yes, those statements are there, what they're going to see is that no witness got on the stand and was willing to say, I saw him shoot him. Which happens fairly regularly in gang cases. That may be the case, but in this case, there's a big difference between substantive evidence of one person's identification and a witness saying, I saw him shoot him. And what would happen now of only the substantive evidence that is denied by both that person and a different person saying, no, I didn't see him shoot him. He's not the shooter. Correct. And so in order for us to get there to the place you want us to be, we would then have to say the judge used his discretion in making a credibility determination on Mr. Kirkland. Is that correct? Yes. The judge was to decide whether this new evidence could probably change the result. And it is our position that Kirkland's recantation is certainly of that conclusive character. Thank you. Thank you, your honor. Justice Ellis, any questions of either party? Maybe just one or two of Mr. Muntz. Kind of piggybacking off Justice Burke, I was thinking the same thing that we see cases all the time where people are convicted on recanted testimony. And I'm trying to think of how this at trial the way he testified at the new trial hearing. So at trial, he testified consistently with his statement to the police, which was defendant was the shooter. Sorry, whose statement to the police? Mr. Kirkman never made a statement to the police. I thought he did. So what did Kirkman do prior to trial? That was the only time he said that the defendant was the shooter. Maybe I'm misremembering this. That was the only evidence presented at the trial. Now, we learned in his recantation that he apparently looked at some photos with the police. But at trial, the state only presented his testimony. They did not present any statement, any grand jury, any grand jury testimony. And with all due respect, your honor, this is exactly the mistake that Judge Kotlin made in ruling on the single statement before trial, at least that we have any evidence of. So he clearly made a statement to somebody because they knew he was a witness. So it's not like they just picked him up off the street. He made a statement somewhere along the line. It may have been at the retrial and at the motion for new trial, but the evidence did come in at the motion for new trial, did it not? That he had made a statement to the police? That he had told the defendant was the shooter? I don't recall that he made a statement to the police. He talked about how he was shown the photo. I mean, I guess there was a conversation during the photo array, but certainly the state never presented any kind of formal statement or testimony from a police officer saying he made this statement. At most, it was a conversation while viewing the photo array. But again, that evidence was not- Mr. Monk, that conversation was he put his signature on a photo array saying this is the shooter. He explained that it wasn't quite that simple. He was at first saying no, but the police pressured him or coerced him in some manner. And again, the state did not present any of this at trial. Counsel, I know. Because there's no reason to. Because he testified the way they wanted him to. Consistent with their case. So they didn't, you know, sometimes you bolster that. I'm not even sure how you would get that in. I suppose you could. But yeah, I mean, he was testifying consistent with their theory and what they expected him to say. I'm just wondering how this would have played out had he testified at trial. Because I've seen cases that have been affirmed where there were two recanting witnesses. Which is very common. You know, gang cases are the most common ones because there's the most fear of retaliation. And you'll see two witnesses, both recanting at trial, both who told the police earlier. And I'm just trying to think how this would have gone had he denied at trial. Had he told the police, had he told the state's attorney before trial, I'm recanting, they would have put him on the stand and let the jury decide whether his recantation is truthful or his prior identification was truthful, right? I'm just trying to play out what this would look like. Yeah, but I think that's part of the problem in a situation like this is we don't know exactly how it would go. And that's why the standard on these kinds of motions is looking at is it of a character that it could probably change the result. We're looking at probably. We can never be certain. And in a situation like this, we don't know exactly how it would have, had he testified the way he did at the motion at trial, we don't know how it would have played out. We don't know whether the state would have attempted to present a photo array or anything like that. And, but more importantly, we defendants are convicted on recantation testimony. I'm sure there are plenty of cases where they're acquitted in cases where people recant. We simply don't know how the jury would resolve it. And I guess all I can say is Mr. Anderson respectfully wants the chance to let a jury decide and not let a judge decide later on that he doesn't think a jury should even have the chance to make this decision. Okay. I just have one short question to Ms. McGann. Ms. McGann, both of these witnesses, whether they identified him before trial, after trial, during trial, at the time of their testimony, they're convicted felons in custody as a matter of fact. Does that have any bearing on the judge's credibility determination when he's hearing this testimony? I cannot, I can't speculate whether or not it had a bearing on the judge's determination. Certainly the jury, you know, that was fronted at trial that they were convicted felons, but the jury still, that did not affect their credibility determinations in identifying that Tyson Kirkman was credibly testifying and rejecting the Elizabeth Coates testimony. All right. Anybody else? No. Okay. All right. This case is very well argued, very well prepared in the briefs, a difficult case, and we thank you both for your presentations. This case will be taken under advisement and the decision will be entered in due course. Thank you very much and have a great day.